Zack Duffly (OR SBN 143109)
zack@pcrlo.org
PORTLAND CIVIL RIGHTS LAW OFFICE
PO Box 82544
Portland, OR 97282
(503) 893-4360

Linda M. Dardarian (CA SBN 131001)*
ldardarian@gbdhlegal.com
Katharine L. Fisher (CA Bar No.305413)*
kfisher@gbdhlegal.com
Ginger L. Grimes (CA SBN 307168)*
ggrimes@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Timothy Fox (CO SBN 25889)*
tfox@creeclaw.org
CIVIL RIGHTS EDUCATION AND
    ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901

Attorneys for Plaintiffs
*Pro hac vice motion to be filed

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ALLEN HINES, TESS RAUNIG, and CAROLE ZOOM, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>     Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Title II of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*** |

CLASS ACTION COMPLAINT

1.      Plaintiffs Allen Hines, Tess Raunig, and CaroleZoom, on behalf of themselves and all other persons similarly situated, complain of Defendant City of Portland ("Defendant" or "the City") and allege as follows:

## INTRODUCTION

2.      Plaintiffs bring this lawsuit against Defendant to redress its systemic failure to provide full and equal access to its pedestrian right of way to Plaintiffs and similarly situated individuals with mobility disabilities.  As alleged further below, the City has failed and continues to fail to install and maintain curb ramps that are necessary to make its pedestrian right of way readily accessible to people with mobility disabilities, and to comply with its obligation to install and/or remediate curb ramps when it engages in alterations or new construction of streets, roadways, sidewalks, and other pedestrian walkways.  A substantial number of the street crossings within the City's pedestrian right of way do not comply with applicable federal regulations addressing accessibility for people with mobility disabilities because, for example, they lack curb ramps entirely, have curb ramps on only one side of a corner, have curb ramps that are obstructed by the presence of obstacles such as telephone poles within the ramp, or have curb ramps that are too narrow, steep, cracked, broken, or uplifted to be used by people with mobility disabilities.

3.      The City's pedestrian right of way is a fundamental public program, service, and/or activity that the City provides for the benefit of its residents and visitors.  Accessible curb ramps are necessary to permit people with mobility disabilities to access the City's pedestrian right of way.  Because the City's pedestrian right of way constitutes a core mode of transportation, the absence of accessible curb ramps prevents people with mobility disabilities from independently, fully, and meaningfully participating in all aspects of society, including

employment, housing, education, transportation, public accommodations, and recreation, among others. Accordingly, an accessible pedestrian right of way is essential to realizing the integration mandate of disability non-discrimination laws, including the ADA and the Rehabilitation Act.

4. Named Plaintiffs Allen Hines, Tess Raunig, and CaroleZoom are three individuals with mobility disabilities who bring this action on behalf of themselves and all persons with mobility disabilities who, like Named Plaintiffs, live in, work in, or visit Portland and are being denied full and equal access to the City's pedestrian right of way and subjected to unlawful or hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right of way.

5. Federal disability access laws were enacted to provide persons with disabilities an equal opportunity to participate fully in civic life. *See* 42 U.S.C. § 12101(a)(7) (Americans with Disabilities Act ("ADA")); 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")). Under the ADA and Section 504, a public entity's sidewalks, crosswalks, and paved paths—collectively referred to as a public entity's "pedestrian right of way"—are a "program," "service," or "activity" that must be readily accessible to persons with mobility disabilities. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). As detailed further below, Defendant has excluded Plaintiffs and all other similarly situated individuals with mobility disabilities from participation in or denied them the benefits of Defendant's pedestrian right of way program, service, or activity, or subjected them to discrimination by: a) failing to install and remediate curb ramps (i) in newly-constructed or altered portions of the City's pedestrian right of way, and (ii) at crossings adjacent to newly constructed or altered roadways; and, b) failing to install, remediate and maintain curb ramps where necessary to provide people with mobility disabilities meaningful access to (i) the City's pedestrian right of way, when

viewed in its entirety, and (ii) facilities in which City programs, services, and activities are made available to the public.

6.     Both the ADA (since January 27, 1992) and Section 504 (since June 3, 1977) have mandated that whenever a government entity newly constructs or alters streets, roads, or highways, it must install curb ramps at any intersection having curbs or other barriers to entry from a street level pedestrian walkway, to ensure that newly constructed or altered pedestrian right of way programs and facilities are readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.151(a)(1), (b)(1), (b)(4)(i)(1), (b)(4)(i)(2); 28 C.F.R. pt. 36, app. D § 10.2.1; 45 C.F.R. § 84.23(b); 36 C.F.R. pt. 1191, app. D § 810.2.3. The ADA and Section 504 also mandate that a public entity operate each program, service, or activity so that the program, service, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150(a), (b)(1); 45 C.F.R. § 84.22(a), (b). To the extent that structural changes to facilities existing as of the effective date of the ADA or Section 504 are necessary to achieve this "program access" mandate, such changes were to have been made by no later than January 26, 1995 under the ADA, and by no later than June 3, 1980 under Section 504. 28 C.F.R. § 35.150(c); 45 C.F.R. § 84.22(d).

7.     The City's pedestrian right of way, when viewed in its entirety, is not readily accessible to and usable by persons with mobility disabilities due to the City's failure to install and maintain accessible curb ramps. The City has also failed to install and maintain accessible curb ramps necessary to allow persons with mobility disabilities to access facilities where City programs, services, and activities are provided to the public. In addition, the City has failed to install accessible curb ramps or remediate existing curb ramps as part of new construction or alterations of its pedestrian walkways, streets, roadways, and highways. As a result, Plaintiffs

and other persons with mobility disabilities must forgo participation in daily activities —

including visiting public facilities, places of public accommodation, or friends — or risk injury

to themselves and/or damage to their mobility devices by traveling on or around inaccessible

portions of the pedestrian right of way.  At times, Plaintiffs are able to use the pedestrian right of

way, but only by taking circuitous routes to avoid barriers to accessibility, which wastes their

time and energy.  As a result of the many missing and noncompliant curb ramps in the City,

people with mobility disabilities do not have full and equal access to the pedestrian right of way.

8.     The denial of meaningful, equal, and safe access to the City's pedestrian right of

way for persons with mobility disabilities complained of herein is the direct result of Defendant's

policies, procedures, and practices with regard to pedestrian walkways and disability access,

including, but not limited to the following:

a.     The failure to install accessible curb ramps at locations where no curb

ramps exist, or where inaccessible curb ramps exist, within the time required by applicable

federal disability access laws or on any other reasonable schedule;

b.     The failure to install accessible curb ramps, or remediate existing

noncompliant curb ramps, at street corners or sidewalks that are newly constructed, resurfaced or

otherwise altered;

c.     The failure to install curb ramps at intersections in the City that are

necessary to provide meaningful, equal, and safe access to the pedestrian right of way;

d.     The failure to develop and implement a process for identifying

intersections and corners throughout the City at which curb ramps are necessary to provide

meaningful, equal, and safe access to the pedestrian right of way;

e.      The failure to adopt and utilize or require and enforce the utilization of a curb ramp design that complies with applicable federal and state design standards or guidelines;

f.      The failure to install accessible curb ramps within a reasonable time frame after receiving a request to do so or otherwise being notified of the need for an accessible curb ramp at a particular location;

g.      The failure to adopt or implement reasonable administrative methods, policies, and procedures for inspecting, repairing, and maintaining the pedestrian right of way, including curb ramps, as required by Title II of the ADA and its implementing regulations including 28 C.F.R. § 35.133 (maintenance of accessible features);

h.      The failure to remediate corners with no curb ramps or with curb ramps that are not properly positioned such that they require pedestrians with mobility disabilities to travel around the corner in the street alongside vehicular traffic in order to access a crossing, or cause pedestrians with mobility disabilities to roll or fall into the roadway;

i.      The failure to remediate curb ramps that are designed and/or constructed in a noncompliant manner such that people with mobility disabilities are denied meaningful access to the pedestrian right of way as a whole.  These deficiencies often include one or more of the following:

(1)      Running, cross, and side slopes of curb ramps that are excessively steep;

(2)      Ramps that are too narrow to accommodate wheelchairs or scooters;

(3)      Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing persons with mobility disabilities to use the much steeper side flares or roll off the sidewalk entirely;

(4)      Excessive counter slopes at the bottoms of curb ramps.  The combination of excessive curb ramp slopes and/or gutter pan counter slopes often forces wheelchair users to scrape the paving with their foot rests and can even bring a wheelchair or scooter to a full stop, creating risks of falling and injury;

(5)      Lips at the bottom of curb ramps where the ramp meets the gutter. Such non-flush transitions create additional risks of scraping the pavement and/or sudden stops and possible falls and injury.  Federal access codes have required smooth transitions at the base of curb ramps for several decades; and

(6)      Obstacles in the path of curb ramps, such as utility poles, which prevent the curb ramps from being accessed.

9.      These administrative methods, policies, and practices, or lack thereof, discriminate against persons with disabilities by denying them access to the City's pedestrian right of way in its entirety, as well as facilities in which City programs, services, and activities are made available to the public.  Large sections of the more than 2,250 miles of sidewalks within the City's pedestrian right of way are inaccessible to persons with mobility disabilities due to missing or faulty curb ramps.  As of the year 2014, only forty-eight percent of the approximately 37,886 sidewalk corners in the pedestrian right of way had accessible, ADA-compliant corner ramps, and nearly 20,000 sidewalk corners had no curb ramps.[1]  Representative

---

[1] City of Portland 2014 Citywide Assets Report – Status and Best Practices, p. 12, at http://www.portlandoregon.gov/bps/article/532125 (Apr. 9, 2015); Sidewalk System Status and Condition Report FY 12-13 (Jan. 2014) at p. 46, at https://www.portlandoregon.gov/transportation/article/497822.

and illustrative examples of the foregoing types of disability access barriers located throughout the City are identified below at Paragraphs 36-40 and in Exhibit A to this Complaint.

10.     For decades, Defendant has failed to meet ADA and Section 504 accessibility requirements, and failed to adopt and implement systematic efforts to ensure that the City's pedestrian right of way is readily accessible to and useable by persons with mobility disabilities. Furthermore, Defendant has for decades made compliance with the ADA and Section 504 a lower priority than other activities and projects, including discretionary activities and projects not mandated by law.  Prioritizing compliance with the ADA and Section 504 in this manner also constitutes a policy or practice that denies program access to and discriminates against persons with mobility disabilities.  This lawsuit seeks a court order requiring Defendant to comply with these laws and to provide people with mobility disabilities meaningful access to the City's pedestrian right of way over 25 years after the enactment of the ADA, and over 40 years after enactment of Section 504's disability rights protections.

11.     Plaintiffs thus bring this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12131, et seq., and its accompanying regulations, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et* seq. and its accompanying regulations.  Plaintiffs seek injunctive relief pursuant to the above statutes and an award of reasonable attorneys' fees, expenses, and costs under applicable law.

12.     In July 2016, Plaintiffs approached the City to resolve this dispute through structured negotiation, rather than litigation.  The parties entered into a Negotiations Agreement on October 19, 2016.  Among other things, the Negotiations Agreement tolled the statute of limitations.  Pursuant to the Negotiations Agreement, the parties exchanged extensive information and negotiated a detailed class settlement agreement.  Plaintiffs are filing this action

with the intention of submitting the settlement agreement to the Court for preliminary approval,

seeking authorization from the Court to provide notice of the settlement agreement to the class,

and then requesting an order from the Court granting final approval to the settlement agreement.

## JURISDICTION AND VENUE

13.     This is an action for injunctive relief, brought pursuant to Title II of the ADA, 42

U.S.C. §§ 12101 to 12213, and Section 504, 29 U.S.C. § 794, *et seq.* to redress systemic civil

rights violations against individuals with mobility disabilities by the City of Portland.

14.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for

claims arising under the ADA and Section 504.

15.     This Court has jurisdiction to issue injunctive relief pursuant to 28 U.S.C. §§ 2201

and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

16.     Venue over Plaintiffs' claims is proper in the District of Oregon because

Defendant resides in the District of Oregon within the meaning of 28 U.S.C. § 1391, and because

the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the District of Oregon.

## PARTIES

17.     Named Plaintiff Allen Hines lives, works, and attends school in Portland.

Plaintiff Hines has a mobility disability that substantially limits his ability to walk, and he uses a

motorized wheelchair for mobility due to his disability.  Plaintiff Hines is a "qualified person

with a disability" and a person with "a disability" within the meaning of all applicable statutes

and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, and 29 U.S.C.

§ 705(20)(B).

18.     Named Plaintiff Tess Raunig lives and works in Portland.  Plaintiff Raunig has a

mobility disability that substantially limits their ability to walk, and uses a manual wheelchair for

mobility due to their disability.  Plaintiff Raunig is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, and 29 U.S.C. § 705(20)(B).

19.    Named Plaintiff CaroleZoom lives and works in Portland every summer.  Plaintiff CaroleZoom has a mobility disability that substantially limits her ability to walk, and uses an electric scooter for mobility.  Plaintiff CaroleZoom is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, and 29 U.S.C. § 705(20)(B).

20.    The Plaintiff class consists of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of Portland through the date of judgment in this action.

21.    Hereafter, references in this document to "Plaintiffs" shall be deemed to include the Named Plaintiffs and each member of the class, unless otherwise indicated.

22.    Presently, and at all times relevant to this complaint, Defendant City of Portland has been a public entity within the meaning of Title II of the ADA and has received federal financial assistance within the meaning of the Rehabilitation Act of 1973 sufficient to invoke its coverage.

23.    The City is a local government entity with the responsibility of providing Plaintiffs with access to its public facilities, programs, services, and activities.  The City is responsible for constructing, maintaining, repairing, and regulating its pedestrian right of way.

## FACTS APPLICABLE TO ALL CLAIMS

24.    As a result of Defendant's policies and practices with regard to curb ramps in the City's pedestrian right of way, people with mobility disabilities have been discriminated against

and denied full and equal access to the benefits of the City's pedestrian right of way program or service, and to facilities in which City programs, services, and activities are made available to the public.

25.     Hereafter, an "Inaccessible" curb ramp shall refer to a curb ramp that did not comply with applicable standards for accessible design (*i.e.*, the Uniform Federal Accessibility Standards ("UFAS"), 1991 ADA Standards for Accessible Design ("ADAAG"), or the 2010 ADA Standards for Accessible Design ("2010 ADAAG")), at the time it was constructed or altered.

26.     Defendant has failed to install, remediate, repair, and maintain curb ramps as required by law.  For example, over 10,000 intersections in the City have no curb ramps.  Even where curb ramps exist, many are improperly installed and/or maintained, lack a flush transition to the street, have excessively steep running, cross, and side slopes, are too narrow, and/or are otherwise noncompliant.  Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, and/or caved.

27.     As a result of Defendant's policies and practices with regard to curb ramps, large segments of the City's pedestrian right of way do not comply with new construction or alteration accessibility requirements.  For example, the City has consistently failed to install curb ramps and remediate existing curb ramps when it alters or constructs sidewalks and streets.

28.     As a result of the many missing and noncompliant curb ramps at intersections throughout the City, the pedestrian right of way, viewed in its entirety, is inaccessible to persons with mobility disabilities.  Plaintiffs and others with mobility disabilities are denied meaningful access to the City's pedestrian right of way, public buildings, parks, transportation, places of employment, and/or other facilities in which City programs, services, and activities are made

available to the public, either through complete denials of access or through delay of travel or unsafe conditions.

29.     This lack of accessible curb ramps is not isolated or limited.  Rather, these barriers to full and equal access to the pedestrian right of way exist throughout the City, thus denying individuals with mobility disabilities full, equal, and meaningful access to the pedestrian right of way City-wide.  Persons with mobility disabilities encounter missing or Inaccessible curb ramps throughout the City, including in such areas as the Foster Powell, Brentwood Darlington, Boise, Pearl District, and Cully neighborhoods.  As a result, persons with mobility disabilities have been denied access to the accommodations and services available to the general public.  Furthermore, these barriers deter persons with mobility disabilities from exploring or visiting areas of the City.  Missing and Inaccessible curb ramps also delay travel and cause persons with mobility disabilities to fear for their safety, as these conditions often create dangerous situations.

30.     Defendant has not provided and does not provide persons with mobility disabilities with any map (whether paper or electronic), signage, or other form of notice of any routes, or parts of routes, in the City's pedestrian right of way that are accessible to persons with mobility disabilities.  Notice of completed accessibility improvements and plans for scheduled accessibility improvements are not posted on the City website, and notice of such information is not made otherwise available to persons with mobility disabilities.  As a result of the lack of any notice, maps, or signage regarding the location of accessible routes within the City's pedestrian right of way, persons with mobility disabilities have been and continue to be deterred from and impeded in travelling to various parts of the City, thus denying them meaningful and equal

access to the City's pedestrian right of way and its other facilities, programs, services, and activities.

31.     Defendant failed to prepare and implement a timely Self Evaluation relating to the construction and maintenance of curb ramps as required by federal law.  The federal regulations of Section 504 of the Rehabilitation Act and the ADA require that public entities create a Self Evaluation by June 3, 1978 and July 26, 1992, respectively.  45 C.F.R § 84.6; 28 C.F.R. § 35.105.  A Self Evaluation must include an evaluation of whether current services, policies, and practices discriminate on the basis of disability.  In October 2014, the City produced an "initial inventory of physical barriers" based on inspections in 2013 and 2014 limited to City-owned parks, buildings, spectator facilities, and parking structures, as well as City-leased facilities with parks programming.  *See* City of Portland ADA Transition Plan at 15-16.  This initial evaluation occurred almost forty years after the deadline established by Section 504, and almost twenty-five years after the deadline established by the ADA.  The evaluation did not include an "assessment of the physical barriers in the public rights-of-way," although the 2014 Transition Plan acknowledged that such an evaluation "must be carried out" and that the City was "creating a plan to review/assess and create a timeline for removing barriers in the public rights-of-way."  *Id.* at 17, 19, 35, 73.

32.     Defendant has failed to prepare and implement a compliant Transition Plan relating to the construction and maintenance of curb ramps in the pedestrian right of way as required by federal law.  The regulations implementing Section 504 of the Rehabilitation Act required public entities that receive federal financial assistance to create Transition Plans by June 3, 1978.  *See* 45 C.F.R. § 84.22(e).  The regulations implementing Title II of the ADA required local governmental entities to create Transition Plans by July 26, 1992.  *See* 28 C.F.R.

§ 35.150(d).  A Transition Plan must include, among other things, an up-to-date schedule for providing curb ramps or other sloped areas where the pedestrian right of way crosses streets.  *See* 28 C.F.R. § 35.150(d)(3); 45 C.F.R. § 84.22(e).  To date, Defendant has not prepared a compliant Transition Plan pursuant to either Section 504 or the ADA.

33.    The October 2014 Transition Plan provides only for limited remediation of unspecified non-compliant curb ramps (included as one of several "Path of Travel" barriers) in City government facilities or parks themselves.  In addition, it does not even propose to begin many such remediations until an unspecified time in 2024 or later.  *See* Transition Plan at 36-61.

34.    Defendant's failure to conduct a timely Self Evaluation and prepare and implement a compliant Transition Plan relating to the pedestrian right of way, including curb ramps, as required by Section 504 and the ADA, is further evidence of Defendant's failure to comply with the "program access" requirements of both statutes.

35.    This discrimination and continuing systemic inaccessibility cause a real and immediate threat of current and continuing harm to persons with mobility disabilities within the City as represented by the experiences of the Named Plaintiffs.

## EXPERIENCES OF THE NAMED PLAINTIFFS

36.    Plaintiff Allen Hines works as a union organizer and is also a graduate student at Portland State University.  He uses a motorized wheelchair for mobility.  He moved to Portland in 2010 after graduating from college in Ohio, in part because he thought Portland would be more accessible for a person who uses a wheelchair.  Despite this hope, he has frequently encountered barriers in the pedestrian right of way, including missing and noncompliant curb ramps.  Plaintiff Hines generally uses the public transit system to travel around Portland, but when he goes out, he has to "consult [his] mental map to figure out where [he] can go" because

of the lack of accessible curb ramps.  In January 2017, he moved to a new home, in part because the missing curb ramps on NE Cully Boulevard near his prior home made it difficult for him to travel to and from his house.  He also encounters missing ramps in other neighborhoods.  For example, after going out for a meal on NE Mississippi Avenue in or around early 2016, Plaintiff Hines was traveling along Skidmore Street but he was forced to stop at NE Rodney Avenue, where there were no curb ramps to allow him to cross the street.  To get to MLK Boulevard so he could catch the bus to go home, he had to take a different route.  He generally avoids that neighborhood due to the lack of accessible curb ramps, and he has turned down invitations from his friends to go out there or to other neighborhoods where he knows the curb ramps are missing or inaccessible.

37.     As another example, before he moved, Plaintiff Hines regularly encountered missing ramps at 41st Avenue and Alameda en route from his neighborhood to the Hollywood neighborhood.  He went (and still goes) to this neighborhood frequently.  The lack of compliant curb ramps has required him to take the bus to this neighborhood, when he could otherwise have gotten there much faster directly in his wheelchair if there had been accessible curb ramps.  Near his office, at SE 64th Avenue and SE Foster Road, Plaintiff Hines encounters missing curb ramps along Foster Road.  In addition to missing ramps, Mr. Hines has also experienced curb ramps that are too steep, which put him at risk that his chair will tip over.  He has occasionally driven his wheelchair in the street when he encounters missing or inaccessible ramps, but he is extremely hesitant to do this because it is so unsafe.  Because of the lack of accessible curb ramps around Portland, Plaintiff Hines feels isolated and does not go out as much as he would like.

38.     Plaintiff Tess Raunig is a musician who has lived in Portland for approximately the past five years.  They (Plaintiff Raunig prefers to use this gender-neutral pronoun) use a manual wheelchair for mobility every day.  Until late 2017, Plaintiff Raunig got around Portland on public transit, usually by bus, and took the bus most days to their music studio.  In part due to difficulties in accessing public transit facilities due to missing or non-compliant curb ramps in the paths of travel to and from such facilities, in late 2017, Plaintiff Raunig purchased a car.  Also in part due to difficulties caused by missing or non-compliant curb ramps in the City's pedestrian right of way, Plaintiff Raunig started working from home, instead of traveling to their music studio.  Plaintiff Raunig regularly encounters numerous missing and inaccessible curb ramps in the Foster Powell neighborhood, where they regularly visit friends and where, until recently, they lived.  Among other locations, Plaintiff Raunig has encountered missing curb ramps on SE Foster Road between SE 65th and SE 80th Avenue, and on SE 50th Avenue between SE Division Street and SE Powell Boulevard.  Plaintiff Raunig also regularly encounters missing or non-complaint ramps in the Pearl District, to which they recently moved.  In particular, Plaintiff Raunig regularly encounters damaged ramps on W. Burnside St. between NW 6th Avenue and NW 23rd Avenue.  In the areas where Plaintiff Raunig frequently travels, some intersections have curb ramps, but many do not.  Of those that do, many are uneven, bumpy, or extremely steep, or have landings where the pavement is not flush with the street, making them Inaccessible and unsafe to navigate and non-compliant with federal standards for accessible pedestrian facilities.

39.     Plaintiff Raunig also experiences missing or inaccessible curb ramps in the City's pedestrian right of way in the Montavilla neighborhood, the Lloyd District and Sullivan's Gulch (where their choirs rehearse), the St. John's and Woodlawn neighborhoods (where they regularly

visit friends), and the Brentwood Darlington neighborhood.  These missing and inaccessible curb ramps require Plaintiff Raunig to take significantly more time to get where they need to go.  According to Plaintiff Raunig, time is very important, because, as an individual with a disability, "things take longer in general," so having to allow extra time to get places due to problematic curb ramps is a significant burden.  Plaintiff Raunig has occasionally driven their chair in the street due to missing curb ramps, but recognizes how dangerous this is.  Plaintiff Raunig worries about their safety, as they have fallen out of their chair several times due to the front caster of their wheelchair catching on an uneven part of the sidewalk or curb ramp.  In one instance, the front caster on Plaintiff Raunig's wheelchair caught an uneven part of a broken curb ramp in downtown Portland near SW Oak Street and NW 9th Avenue.  As a result, Plaintiff Raunig fell out of their chair and into the street.  Luckily, Plaintiff Raunig was with friends who helped them get out of the street and back into their chair without Plaintiff Raunig being injured.  Plaintiff Raunig is afraid that something similar will happen due to uneven curb ramps.

40.    Plaintiff CaroleZoom is an artist and consultant who spends most summers in Portland.  She previously lived in Portland year-round, and for most of the past few summers, she has spent 1-2 months staying in Portland at an apartment in the Pearl District.  She last visited Portland in July 2016 (for one month), and plans to visit again in the summer of 2018.  CaroleZoom has muscular dystrophy and uses an electric scooter for mobility.  She has experienced significant accessibility barriers due to missing curb ramps each summer she has visited Portland.  For example, on her way from the Pearl District to an arts area around Everett Street and Broadway that she likes to frequent, CaroleZoom has encountered missing ramps at intersections on Everett Street near the North Park Blocks.  She has also encountered missing ramps at Glisan and NW 4th Avenue when going from the apartment to the Chinese Garden,

which she likes to visit in the summer.  Because of missing ramps, there is no clear path of

travel, and she has had to zigzag in and out of car traffic to get to her destination.  This is

frightening to her because there is a lot of traffic in that area, but the lack of accessible curb

ramps leaves her no choice.

41.    These experiences are typical of those experienced by persons with mobility

disabilities in the City and demonstrate the inaccessibility, fear, humiliation, and isolation that

people with mobility disabilities experience while trying to navigate the City's pedestrian right

of way.

## OTHER SPECIFIC BARRIERS

42.    Exhibit A to this Complaint identifies missing curb ramps at various locations

within the City's pedestrian right of way where streets have been altered (*e.g.*, by re-paving) in

the past approximately 15 years.  This does not include alterations in earlier years, even though

all alterations post-dating June 3, 1977 were required to be accompanied by the installation of

compliant curb ramps along the altered roadways.  Plaintiffs incorporate by reference the entire

contents of Exhibit A into this Complaint as though fully alleged herein.  The barriers listed in

Exhibit A require remediation to meet the City's program access obligations, and/or its

obligations to perform new construction and/or alterations in full compliance with federal and

state disability access design standards.

43.    Exhibit A does not represent an exhaustive list of missing curb ramps, nor does it

identify ramps that exist but are Inaccessible.  Exhibit A merely provides a partial list of such

barriers facing the Named Plaintiffs and class members throughout the City as they attempt to

navigate the City's pedestrian routes.  Neither the ADA nor Section 504 requires Plaintiffs to

identify each and every barrier limiting access to the City's pedestrian routes.  Rather, the ADA

and Section 504 require the City to complete a transition plan identifying barriers at existing facilities, including those barriers involving curb ramps.  The City has failed to comply with this requirement as alleged herein.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this action individually, and on behalf of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of Portland, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

45.     Each member of the class is a "qualified person with a disability" and/or a person with a "disability" pursuant to 42 U.S.C. § 12131(2) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq.  The persons in the class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.  The class consists of tens of thousands of persons with mobility disabilities.

46.     Defendant has failed and continues to fail to comply with the ADA and Section 504 in its implementation of the City's administrative methods, policies, procedures, and practices with regard to the construction, remediation, and maintenance of curb ramps that provide access to the City's pedestrian right of way.

47.     Defendant has not adopted and does not enforce appropriate administrative methods, policies, procedures, and/or practices to ensure that it is in compliance with the ADA and Section 504 to ensure nondiscrimination against persons with mobility disabilities and equal access to facilities, programs, services, and activities for persons with mobility disabilities.

48.     The violations of the ADA and Section 504 set forth in detail herein have injured all members of the proposed class and violated their rights in a similar way.

49.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.  Class claims are brought for the purposes of obtaining injunctive relief only.

50.     The claims of the Named Plaintiffs are typical of those of the class in that they arise from the same course of conduct engaged in by Defendant.  The relief sought herein will benefit all class members alike.

51.     Named Plaintiffs will fairly and adequately represent the interests of the class. They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases involving the accessibility of municipal pedestrian rights of way for classes of individuals with mobility disabilities.

52.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

a.      The class is so numerous that it would be impractical to bring all class members before the Court;

b.      There are questions of law and fact which are common to the class;

c.      The Named Plaintiffs' claims for injunctive relief are typical of the claims of the class;

d.      The Named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in law reform class actions and the disability rights issues in this case; and

e.      Defendant has acted or refused to act on grounds generally applicable to the class.

53.     The common questions of law and fact, shared by the Named Plaintiffs and all class members, include but are not limited to:

a.      Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, by failing to install or remediate curb ramps that make the City's pedestrian right of way program, service, or activity accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

b.      Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, by failing to install or remediate curb ramps that make facilities in which City programs, services, or activities are made available to the public accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

c.      Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. section 794 et *seq.*, by failing to install or remediate curb ramps that make the City's pedestrian right of way program, service, or activity accessible to and useable by persons with mobility disabilities, and otherwise discriminating against people with mobility disabilities, as set forth above;

d.      Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C. section 794 et *seq.*, by failing to install or remediate curb ramps that make facilities in which City programs, services, or activities are made available to the public accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

e.      Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 28 C.F.R. § 35.151, triggering an obligation to construct or retrofit curb ramps;

f.      Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 45 C.F.R. § 84.23, triggering an obligation to construct or retrofit curb ramps;

g.      Whether Defendant, by its actions and omissions alleged herein, has engaged in a pattern or practice of discriminating against Plaintiffs and other persons with mobility disabilities in violation of applicable federal and state disability access laws.

## FIRST CLAIM FOR RELIEF
### Title II of the Americans with Disabilities Act of 1990
### 42 U.S.C. § 12101 *et seq.*

54.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

55.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

56.     At all times relevant to this action, the City was and is a "public entity" within the meaning of Title II of the ADA and provides a pedestrian right of way program, service, or activity to the general public.

57.     At all times relevant to this action, Plaintiffs were and are qualified individuals with disabilities within the meaning of Title II of the ADA and meet the essential eligibility requirements for the receipt of the services, programs, or activities of the City.  42 U.S.C. § 12131.

58.     Defendant is mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. § 35.149.  This requirement applies to all programs, services, and activities that a public entity offers, whether or not they are carried out in facilities that have been constructed or altered since January 26, 1992.  Pedestrian rights of way themselves constitute a vital public program, service, or activity under Title II of the ADA.  28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002).

59.     Furthermore, the regulations implementing Title II of the ADA specifically provide that a public entity must install curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992 and must comply with Uniform Federal Accessibility Standards (UFAS) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG).  28 C.F.R. § 35.151.  A street resurfacing project by a public entity is one example of an alteration under the meaning of the regulation.  *Kinney v. Yersalim*, 9 F.3d 1067, 1073-74 (3rd Cir. 1993); *Lonberg v. City of Riverside*, No. 97-CV-0237, 2007 WL 2005177, at * 6 (C.D. Cal. 2007).

60.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA.  28 C.F.R. § 35.133.  Facilities required to be accessible include roads, walks, and passageways.  28 C.F.R. § 35.104.

61.     Due to the lack of accessible curb ramps as alleged above, as well as Defendant's failure to conduct a timely Self Evaluation and implement a compliant Transition Plan for the pedestrian right of way, the City's pedestrian right of way is not fully, equally, or meaningfully accessible to Plaintiffs when viewed in its entirety.  Nor are the facilities in which City programs,

services, and activities are made available to the public.  Defendant has therefore violated the

"program access" obligation applicable to pedestrian right of way facilities that have not been

newly constructed or altered since January 26, 1992.

62.    Additionally, the sidewalks, cross walks, and other walkways at issue constitute

facilities within the meaning of ADAAG and UFAS.  Plaintiffs are informed, believe, and

thereon allege that since January 26, 1992, Defendant has constructed, altered, or repaired parts

of these facilities within the meaning of the ADAAG and the UFAS, and that Defendant, through

its administrative methods, policies, and practices, has failed to make such facilities readily

accessible to and usable by persons with disabilities through the construction and retrofit of curb

ramps as required under federal accessibility standards and guidelines.

63.    Plaintiffs are informed, believe, and thereon allege that since March 15, 2012 (the

effective date of the 2010 Standards for Accessible Design), Defendant has constructed, altered,

or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that

Defendant, through its administrative methods, policies, and practices, has failed to make such

facilities compliant with the ADAAG and the UFAS as updated in 2010, as required under 28

C.F.R. 35.151(c)(5).

64.    Plaintiffs are informed, believe, and thereon allege that Defendant and its agents

and employees have violated and continue to violate Title II of the ADA by failing to maintain

the features of the City's walkways and curb ramps that are required to be accessible.

65.    Plaintiffs are informed, believe, and thereon allege that Defendant and its agents

and employees have violated and continue to violate Title II of the ADA by failing to timely

respond to and remedy complaints regarding the lack of accessible curb ramps necessary to

ensure access to the City's pedestrian right of way.

66.     The ADA's regulations at 43 C.F.R. § 17.550(a)(3) prevent public entities from refusing to comply with their obligations to provide persons with disabilities meaningful access to their programs and services by claiming that doing so would impose an undue financial or administrative burden, unless such a determination is made by an agency head or his or her designee after consulting all agency resources available for use in the funding and operation of the conducted program or activity and the determination is accompanied by a written statement of the reasons for reaching that conclusion.  On information and belief, the City, through its agency heads and/or designees, has failed to make such a determination accompanied by the required written statement and has, therefore, failed to demonstrate that providing the access Plaintiffs seek to its pedestrian right of way would impose an undue financial or administrative burden.

67.     As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered and continue to suffer difficulty, hardship, anxiety, and danger due to Defendant's failure to remediate missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right of way.  These failures have denied and continue to deny Plaintiffs the full, equal, and meaningful access to the pedestrian right of way that the ADA requires.

68.     Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing future violations, injunctive relief is an appropriate remedy.

69.     Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiffs are entitled to injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

## SECOND CLAIM FOR RELIEF
### Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794 *et seq.*

70.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

71.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ."  29 U.S.C. § 794(a).

72.     Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City.  *See* 29 U.S.C. § 794(b).

73.     The City is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

74.     Defendant and its agents and employees have violated and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to, discrimination in the benefits and services of the City's pedestrian right of way and for the reasons set forth above.

75.     Additionally, under Section 504, a recipient of federal financial assistance must install ADAAG- or UFAS-compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after June 3, 1977.  *Willits v. City of Los Angeles*, 925 F. Supp. 2d. 1089, 1094 (C.D. Cal. 2013).  Defendant has violated Section 504 by failing to construct or install such compliant curb ramps at intersections throughout the City where it has newly constructed or altered streets, roads, and/or highways since June 3, 1977.

76.     As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer discrimination, difficulty, hardship, anxiety, and danger due to Defendant's failure to remediate missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right of way.  These failures have denied Plaintiffs the full, equal, and meaningful access to the pedestrian right of way that Section 504 requires.

77.     Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing violations, injunctive relief is an appropriate remedy.

78.     Pursuant to 29 U.S.C. § 794a, Plaintiffs are entitled to injunctive relief, and to recover from Defendant the reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

79.     THEREFORE, Plaintiffs request judgment as follows:

A.     Certification of Plaintiffs' claims as a Class Action and certification of Plaintiffs as Class Representatives and their counsel as Class Counsel.

B.     Issuance of permanent injunction requiring Defendant to undertake remedial measures to mitigate the effects of Defendant's past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes.  At a minimum, Defendant must be enjoined to take the following actions:

1.     Ensure that the City installs, remediates, repairs, and maintains curb ramps such that, when viewed in its entirety, the City's pedestrian right of way is readily accessible to and useable by individuals with mobility disabilities;

2.     Ensure that the City installs, remediates, repairs, and maintains curb ramps such that facilities in which City programs, services, and activities are made available to the public are readily accessible to and useable by individuals with mobility disabilities;

3.      Ensure prompt remedial measures to cure past violations of the City's duty to construct or alter curb ramps as required by the new construction and alteration obligations of Title II of the ADA, 28 C.F.R. § 35.151(a), (b), (c) or (i), and Section 504, 45 C.F.R. § 84.22, and the curb ramp design standards in effect at the time of such new construction or alterations;

4.      Ensure that all future new construction and alterations to the City's curb ramps fully comply with the 2010 ADA Standards for Accessible Design, or other federal and state disability access design standards, whichever is most stringent in its disability access requirements;

5.      Ensure that Defendant adopts and implements administrative methods, policies, and practices to maintain accessible curb ramps; and

6.      Remain under this Court's jurisdiction until Defendant fully complies with the Orders of this Court;

C.      Reasonable attorneys' fees and costs, as provided by law;

D.      Monetary relief to the class representatives; and

E.      Such other relief as the Court finds just and proper.

Dated:  May 17, 2018                    Respectfully submitted,

s/Zack Duffly
Zack Duffly (OR SBN 143109)
zack@pcrlo.org
PORTLAND CIVIL RIGHTS LAW OFFICE
PO Box 82544
Portland, OR 97282
Tel:  (503) 893-4360
Fax:  (503) 841-6117

Linda M. Dardarian (CA Bar No. 131001)*
ldardarian@gbdhlegal.com
Katharine L. Fisher (CA Bar No. 305413)*
kfisher@gbdhlegal.com
Ginger L. Grimes (CA SBN 307168)*
ggrimes@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel:  (510) 763-9800
Fax:  (510) 816-1083 (Fax)

Timothy Fox (CO SBN 25889)*
tfox@creeclaw.org
CIVIL RIGHTS EDUCATION AND
    ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901


Attorneys for Plaintiffs
* *Pro hac vice* motion to be filed