Zack Duffly (OR SBN 143109)
zack@pcrlo.org
PORTLAND CIVIL RIGHTS LAW OFFICE
PO Box 82544
Portland, OR 97282
503-893-4360

Linda M. Dardarian (CA SBN 131001)*
ldardarian@gbdhlegal.com
Katharine L. Fisher (CA SBN 305413)*
kfisher@gbdhlegal.com
Ginger L. Grimes (CA SBN 307168)*
ggrimes@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
510-763-9800

Timothy Fox (CO SBN 25889)*
tfox@creeclaw.org
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
303-757-7901

Attorneys for Plaintiffs


Tracy Reeve, OSB # 891123
Tracy.Reeve@portlandoregon.gov
J. Scott Moede OSB #934816
Scott.Moede@portlandoregon.gov
Linda Law OSB # 943660
Linda.Law@portlandoregon.gov
Kenneth McGair OSB # 990148
Ken.McGair@portlandoregon.gov
Portland City Attorney's Office
1221 SW Fourth Avenue, Room 430
Portland, OR  97204
503-823-4047

Kymberly K. Evanson, WSBA # 39973*
kymberly.evanson@pacificalawgroup.com
PACIFICA LAW GROUP LLP
1191 2nd Ave, Suite 2000
Seattle, WA 98101
206-245-1700

Attorneys for Defendant
*Pro hac vice motion pending

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ALLEN HINES, TESS RAUNIG, and CAROLEZOOM, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>CITY OF PORTLAND,<br><br>      Defendant. | Case No.: 3:18-cv-00869-HZ<br><br>**JOINT MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiffs Allen Hines, Tess Raunig, and CaroleZoom ("Plaintiffs") and Defendant City of Portland (the "City") request final approval of a class action settlement that will transform the City's pedestrian right of way through the installation or remediation of 18,000 curb ramps on City streets over the next 12 years. This Court has already preliminarily approved the proposed Consent Decree ("Consent Decree" or "Decree"), which provides extensive injunctive relief to a class of tens of thousands of people with mobility disabilities ("Settlement Class" or "Class Members") who use the City's pedestrian facilities. Since preliminary approval, the City and Class Counsel have complied with the Court's order directing widespread notice of the Decree

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 2

20196 00002 hh14dv10mf.002

through publication in multiple newspapers, web postings in four languages, and targeted distribution to organizations that serve individuals with mobility disabilities.   Consistent with this Court's preliminary finding that the settlement embodied in the Decree is fair, adequate and reasonable, no objections to the settlement have been received.

Implementation of the Consent Decree will result in permanent transformation of the City's pedestrian infrastructure to the benefit of all Portland residents and visitors.   Its benefits far outweigh the risks of litigation to both the Plaintiffs and the City.   Accordingly, the parties respectfully ask that the Court confirm certification of the settlement class and grant final approval of the Decree.

## I.    FACTUAL BACKGROUND

### A.    Negotiation of Consent Decree

On July 22, 2016, Plaintiffs' Counsel sent a letter to the offices of the Portland City Attorney and PBOT alleging that the City lacked adequate curb ramps that comply with applicable requirements of federal disability rights laws.  Declaration of Timothy Fox in Support of Motion for Preliminary Approval ("Fox Decl.") ¶ 24, ECF # 12.   The letter proposed that the parties work cooperatively to resolve these problems as an alternative to litigation.  *Id.*   The City then voluntarily entered into a structured negotiation agreement with the Plaintiffs, and for a period of 16 months, the parties exchanged extensive information and documents pertaining to the status of existing curb ramps in the City's pedestrian right of way, the City's ongoing and future construction and remediation of curb ramps in the City's pedestrian right of way, the identification of locations where the installation or remediation of curb ramps remained necessary, and the City's past and present policies concerning curb ramps.  *Id.* at ¶ 25.  The City invested substantial resources in the investigation and negotiation, and permitted the Plaintiffs to

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 3

examine PBOT's internal GIS database, provided voluntary technical assistance to the Plaintiffs from City staff, and offered to host field visits to inspect the City's pedestrian right of way. *Id.* ¶ 26. As a part of this process, the City collected and provided to Plaintiffs voluminous information regarding the City's past, present, and future work to improve pedestrian accessibility. *Id.* The City also made PBOT staff available to the Plaintiffs on multiple occasions to provide information about City infrastructure and policies. *Id.* In addition, Plaintiffs' counsel conducted in-person inspections of hundreds of sidewalk corners in Portland's pedestrian right-of-way in order to substantiate Plaintiffs' position regarding the non-compliance of Portland's sidewalk corners with federal disability access requirements. *Id.*

As a result of the parties' robust negotiations and cooperative information sharing, the parties reached a settlement agreement, the terms of which are set forth in the Consent Decree. Based upon extensive analysis of the facts and the applicable law and taking into account the risks and uncertainties associated with litigation and the delays that may result from trial and appeals, Class Counsel concluded that the settlement embodied in the Consent Decree provides substantial benefits to the Settlement Class and is fair, reasonable, and adequate and in the best interests of the Plaintiffs and the Settlement Class. The City likewise concluded that settlement of this matter is desirable to avoid the time, risk, and expense of defending protracted litigation, to fulfill its long-standing commitment to promoting and enhancing the rights of residents and visitors with disabilities, to ensure compliance with laws protecting the rights of individuals with mobility disabilities, and to resolve potential claims of the Plaintiffs and the Settlement Class.

### B.    Preliminary Approval

On June 4, 2018, this Court granted preliminary approval of the Consent Decree, including (1) approving certification of the proposed settlement Class pursuant to Federal Rule

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 4

of Civil Procedure 23(b)(2), and appointing named Plaintiffs and their counsel as representatives of the Settlement Class; (2) approving the proposed Class Notice and its distribution to Class Members and all persons entitled thereto; (3) ordering an implementation and notice schedule, including deadlines for submission of objections; and (4) scheduling the final approval hearing for September 24, 2018. ECF No. 25 at 2-7. The Court also determined, on a preliminary basis, that the Decree was "fair, adequate and reasonable to all potential Class Members" and that it appeared to have "been reached as the result of good faith, prolonged, serious, and non-collusive arms-length negotiations." ECF No. 25 at 24.

**C.      Notice to the Class and Absence of Objections**

After preliminary approval, the parties effected notice pursuant to this Court's Order granting preliminary approval of the Consent Decree. Declaration of Scott Moede ("Moede Decl."), ¶¶ 5-9. Specifically, on June 8, 2018 and once each week for four consecutive weeks, the City published notice of the proposed Decree in both The Portland Tribune and The Oregonian newspapers. *Id.*, Exs. 6, 7. On June 21, 2018, the City posted notice of the proposed Decree in English, Spanish, Chinese and Vietnamese on the City's official website. Moede Decl., Exs. 1-5. Such notice included: (i) a brief statement of the *Hines* Action, the settlement embodied in the Consent Decree, and the claims released by the Settlement Class; (ii) the date and time of the Final Approval Hearing of the proposed Consent Decree (September 24, 2018 at 10:00 a.m.); (iii) the deadline for submitting objections to the proposed Consent Decree; and (iv) the web page, address, and telephone and fax numbers that may be used to obtain a copy of the complete Consent Decree. *Id.* On June 6, 12 and 25, Class Counsel provided a copy of the Notice of Settlement to a list of organizations that serve individuals with Mobility Disabilities. Declaration of Timothy P. Fox in Support of Joint Motion for Final Approval of Class Action

JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
PAGE 5

Settlement, filed herewith, ¶¶4-6 ("2nd Fox Decl.").  The list of organizations was filed as Exhibit "C" to the Consent Decree.  ECF No. 25-1.

Finally, on June 22, 2018, Class Counsel at CREEC posted on its website a copy of the Notice of Settlement in English, Spanish, Chinese and Vietnamese, and in an accessible electronic format that can be recognized and read by software commonly used by individuals with visual impairments to read web pages.  2nd Fox Decl. ¶ 8.

Distribution of the notice through publication in multiple languages in multiple local newspapers and posting on multiple accessible websites, coupled with facilitating the mailing or emailing of the notice to members of the Settlement Class through those organizations that serve them, ensured that the notice reached the maximum number of members of the Settlement Class in the most efficient and cost-effective manner.  The proposed form of notice and the proposed distribution plan fairly apprised members of the Settlement Class of the settlement and their options with respect thereto, and fully satisfied due process requirements for a Rule 23(b)(2) settlement class with no opt-out rights.

As of the date of this filing, the parties have received no objections to the Settlement Agreement.  2nd Fox Decl. ¶ 9.

## II.    SUMMARY OF PROPOSED SETTLEMENT

The Consent Decree, attached in full as Exhibit 1 to the Court's Order Granting Preliminary Approval of Settlement, includes the following negotiated and agreed-upon terms:

### A.    Injunctive Relief

### 1.  Installation and Remediation of Curb Ramps

Under the Consent Decree, whenever the City performs construction or alteration of its roadways or pedestrian facilities, the City will install curb ramps that are missing and remediate

curb ramps that do not comply with applicable federal disability access standards at all locations affected by the project.[1]  *See* 28 C.F.R. § 35.151(a), (b).  The only exceptions arise where installation or upgrade is structurally impracticable, in conjunction with new construction, *see* 28 C.F.R. § 35.151(a)(2), or technically infeasible, in conjunction with alteration of an existing facility, *see* 28 C.F.R. § 35.151(b)(2).  If the City determines that installation or remediation of a curb ramp at a particular location is structurally impracticable or technically infeasible, the City will ensure that any ramp that is installed or remediated complies with accessibility standards to the maximum extent feasible.  Determinations of structural impracticability or technical infeasibility will be supported by adequate documentation.

The Consent Decree further requires the installation or remediation, on average, of 1,500 curb ramps in the City in each calendar year (the "Annual Commitment").  The Annual Commitment includes the installation of new accessible curb ramps and raised crosswalks and remediation of existing non-compliant curb ramps, anywhere within the City's pedestrian right-of-way and constructed by the City or by any third-party.  The Annual Commitment includes curb ramps installed or remediated in conjunction with new construction and alteration of roadways and pedestrian facilities, as described above, as well as curb ramps installed or remediated in response to requests made by persons with mobility disabilities.

The Consent Decree permits the City to install and remediate curb ramps ahead of this schedule.  If it does so, the City may bank up to a total of 750 curb ramps per year, which it may then credit to a later calendar year.  In addition, if the City experiences unexpected delays in major capital improvement projects based on factors outside of the City's control, it may install

---

[1] The City is not required to install curb ramps where sidewalks do not exist or on corners where there is no legal crossing.

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 7

or remediate up to 300 fewer than the Annual Commitment, but it must make up the deficit within two years.

As a result of these provisions, curb ramp installation and remediation will increase significantly from past practice. For example, from 2010 to 2015, the City of Portland constructed approximately 744 ramps per year. By agreeing to the remediation or installation of 1500 curb ramps per year, the City will more than double its historical annual average. Fox Decl. ¶ 44.

### 2.  Prioritization and Transition Plan

As noted above, whenever the City engages in new construction or alterations of roadways and pedestrian facilities, the City will install new curb ramps or remediate existing ramps to ensure their compliance with applicable standards. In addition, the Decree mandates that the City will also install ramps in order to meet the Annual Commitment outside of new construction and roadway alteration projects. For these projects, consistent with federal regulations, curb ramps shall be prioritized at locations that serve the following areas, in the order below:

a.    Government offices, facilities, and schools (including the pedestrian rights of way adjacent to facilities owned or operated by the City, and the paths of travel leading from such adjacent pedestrian rights of way to the primary entrances to such facilities);

b.    Transportation corridors;

c.    Hospitals, medical facilities, assisted living facilities and other similar facilities;

d.    Places of public accommodation such as commercial and business zones;

e.    Facilities containing employers; and

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 8

f.    Residential neighborhoods.

*See* 28 C.F.R. § 35.150.

To guide the installation of these curb ramps, the City will perform a survey of all City corners at street segments with pedestrian walkways to identify the number and types of curb ramps at each corner as well as curb ramps and associated ramp landings that are missing or are not compliant with federal standards.  Based on the information gathered in the survey, and within three years of the effective date of the Decree, the City Council will be presented with an updated ADA Transition Plan for adoption.  This updated ADA Transition Plan will guide the City's curb ramp remediation and installation work for the duration of the Consent Decree.  *See* 28 C.F.R. § 35.150(d); *see also* 45 C.F.R. § 84.22(e).  The Transition Plan will include a schedule for accessible curb ramp installation and remediation, based upon the prioritization criteria above.  To the extent known, the Transition Plan will also include locations of planned new construction or alterations that trigger the obligation to install new curb ramps.  ECF 25-1, at V.E.

### 3. Curb Ramp Request Program

The Consent Decree also mandates improvements in the City's curb ramp request program for requests by or on behalf of individuals with mobility disabilities for installation or remediation of curb ramps in specific locations throughout the City.  Though a request program has been offered by the City for years, the Consent Decree improves response times, requires an accessible request form for making the requests on the City's website, and budgets for the installation of at least 100 requested ramps per year, with a required annual review to evaluate increasing the program's allocation in the event of demonstrated need.  Ramps constructed via

the request program count toward the City's Annual Commitment.  Fox Decl. ¶ 33; ECF 25-1 at ¶ V.F.

### 4.  ADA Technical Advisor

Throughout the 12-year Compliance Period, the Decree further requires PBOT to appoint an ADA Technical Advisor who will assist in developing the Transition Plan and implementing the Consent Decree.  The Technical Advisor will have qualifications comparable to the following: (i) experience in evaluating or assisting public entities in evaluating the accessibility of facilities under Title II of the ADA and Section 504; (ii) knowledge of current federal and state accessibility standards; (iii) a minimum of five (5) years' experience in providing ADA consulting services related to accessible facilities; and (iv) a professional civil engineer licensed to practice in Oregon.  Fox Decl. ¶ 34; ECF 25-1 at ¶ V.A.1.

### 5.  Reporting

On an annual basis by the end of the second quarter of each year of the Decree, the City will report to the parties, in writing, regarding the status of the City's compliance with the Consent Decree.  The Annual Report will include summary information detailing the number of curb ramps installed and remediated and their locations, and the number and locations of curb ramps installed or remediated via the curb ramp request program described above.  In conjunction with the Annual Report, the City shall provide access to the following information via the City's GIS database:

• Detailed information demonstrating the number and locations of curb ramps installed or remediated by the City, its contractors, or third parties in the preceding calendar year, including links to view the design data, photographs, and sign-offs for each completed ramp;

• Documentation demonstrating locations where ramps have been installed and remediated to the maximum extent feasible, or were not installed, due to Technical Infeasibility or Structural Impracticability; and

JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
PAGE 10

• Documentation showing the number ramps requested via the Curb Ramp Request System and respective response times from notification of receipt of request through time of curb ramp installation or remediation, with links to the completed ramps in the GIS database.

Additionally, the City will ensure that Plaintiffs have access to the City's GIS Database upon Plaintiffs' reasonable request throughout the term of the Decree.  Fox Decl. ¶ 35; ECF 25-1 at V.H.

Finally, the City will pay Plaintiffs' attorneys' fees, costs and expenses for work done in connection with monitoring the Decree, subject to limitations specified in the Decree, including a cap of $480,000 for total monitoring fees, expenses, and costs throughout the term of the Decree. ECF 25-1 at ¶ VI.B.

**B.    Dispute Resolution**

Enforcement of the Consent Decree will be subject to the continuing jurisdiction of this Court.  If either party believes that a dispute exists relating to any violation of or failure to perform any of the provisions, that party will first provide a written statement describing the alleged violation or failure to perform with particularity, after which the other party will have 15 business days to provide a written response and 45 days to cure the alleged violation or failure to perform.  At that point, if the party alleging a violation or failure to perform maintains that the violation or failure to perform has not been cured, the parties will meet and confer in person or by telephone, and the other party will have an additional 30 days to cure.  If the Parties are unable to resolve the dispute informally, they will engage in good faith efforts to resolve it through mediation.  If mediation fails, then either party may file a motion with the Court to enforce the Decree.  Fox Decl. ¶¶ 36-38; ECF 25-1 at ¶ V.I.

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 11

### C.    Release of Claims

In exchange for the injunctive relief proposed in the Consent Decree, Plaintiffs have agreed to release any injunctive, declaratory, or non-monetary claims against the City that were brought, could have been brought, or could be brought now or in the future by the Settlement Class relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair or maintenance of curb ramps in the City's pedestrian right of way at any time prior to the effective date of the Consent Decree through the end of the Term.  ECF 25-1 at ¶ VII.  The release does not apply to claims related to monetary damages, personal injuries or property damage with respect to unnamed Class Members.  It also does not apply to components of the City's sidewalk system other than curb ramps.  *Id.*

### D.    Awards to Named Plaintiffs and Class Counsel's Attorneys' Fees, Expenses, and Costs

Subject to Court approval after an application by Plaintiffs, the City will pay each of the Named Plaintiffs $5,000 in consideration for their release of claims and in recognition of the services they rendered to the Class.  ECF 25-1 at ¶ VI.A.  The City agrees that, if the Court grants final approval of the Consent Decree, Plaintiffs are prevailing parties for the purposes of awarding reasonable attorneys' fees and costs.  Plaintiffs have moved separately for an award of reasonable attorneys' fees, costs, and expenses in the amount of $334,666[2] pursuant to Rule 23(h) of the Federal Rules of Civil Procedure.  The City does not oppose Plaintiffs' motion.  *Id.* at ¶ VI.B.

---

[2] This amount includes $279,666 for attorneys' fees incurred from January 1, 2016 through October 31, 2017, plus $40,000 for attorneys' fees for the period November 1, 2017 to the Effective Date, and a maximum not to exceed amount of $15,000 for costs and expenses.  *Id.*

## III.    LEGAL ARGUMENT

**A.    The Class Action Settlement Embodied in the Consent Decree Is Fair and Reasonable and Should Be Granted Final Approval.**

Judicial approval of a class action settlement under Rule 23 generally involves three steps.  First, at the preliminary approval stage, the parties "submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Federal Judicial Center, Manual for Complex Litigation (4th ed. 2004), § 21.632 ("Manual").  Second, if preliminary approval is granted, the class representatives must disseminate notice of the proposed settlement to affected class members.  *Id.* § 21.633.  Third, the court conducts a final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning fairness, adequacy, and reasonableness of the settlement are presented.  *Id.* § 21.634.  This procedure safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.  *See* Newberg on Class Actions, § 13.39 (5th ed. 2016) ("Newberg").

To grant final approval of a settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 625 (the "universally applied standard" is whether the settlement is "fundamentally fair, adequate, and reasonable").  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.

In determining whether the settlement is fair, adequate, and reasonable, the Court must balance several factors, including: the strength of the plaintiff's claims; the likely risks and expenses involved in further litigation; the risk of maintaining class action status throughout trial; the value offered in settlement; the extent of discovery and other litigation completed; the

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 13

experience and views of counsel; and the views of class members toward the settlement. *See id.*; *see also Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016).  Although the Court must "explore [] comprehensively all factors" it is not required to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (quoting *Officers for Justice*, 688 F.2d at 625).  As discussed below, final approval of the parties' settlement fulfills the required factors.

### 1.  The Settlement Is Entitled to a Presumption of Fairness.

Where a settlement is the product of arms-length negotiations conducted by experienced class counsel, the Court begins its analysis with a presumption that the settlement is fair and reasonable.  *See Lane*, 166 F. Supp. 3d at 1190 (citing *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)); 5 Newberg § 13.45.  At this stage, where this Court has granted preliminary approval of the settlement, which was the result of the parties' arms-length negotiations and the judgment of experienced counsel following sufficient investigation and discovery, the presumption applies and the settlement should be approved.

Moreover, the settlement here is in fact fair and reasonable.  First, the parties reached the Consent Decree after 16 months of structured, arms-length negotiation.  Second, Class Counsel have extensive experience litigating and settling disability rights class actions and other complex matters.  They have diligently investigated the factual and legal issues raised in this action.  Fox Decl. ¶¶ 15-23.  Class Counsel are confident that the relief achieved by the proposed settlement is sufficient to address the concerns identified in the Complaint.  *Id.* ¶¶ 41-46.  Thus, the fact that qualified, well-informed counsel endorse the Consent Decree as being fair, reasonable, and

adequate weighs in favor of final approval.  *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d

1052, 1078-79 (C.D. Cal. 2010); *Nat'l Rural Telecomm's Coop.*, 221 F.R.D. at 528.

### 2.   The Absence of Objections to the Proposed Settlement Agreement Strongly Favors Final Approval.

In determining the fairness of a settlement, the Court should consider class member

objections to the settlement.  The absence of a large number of objections to a proposed

settlement raises a strong presumption that the terms of the agreement are fair.  *See, e.g.*,

*Churchill Vill., L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (approving a

settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members

objected to the settlement"); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.  Here, the fact

that the Parties have received no objections to the Settlement Agreement weighs strongly in

favor of final approval.  2nd Fox Decl., ¶ 9.

### 3.   The Settlement Is Fair Given the Benefits to the Class and the Risks Associated with Litigation.

The significant benefits that the Settlement Class will enjoy under the Consent Decree,

considered in light of the risks of litigation, support final approval.

Under the Settlement, 1,500 curb ramps in the City will be installed or remediated every

year for the next 12 years.  The Consent Decree makes allowances for minor variations to this

schedule, but it guarantees the installation or remediation of 18,000 curb ramps during the Term,

a commitment that substantially exceeds past rates of curb ramp construction in the City.  Fox

Decl. ¶¶ 43-45.  In meeting this requirement, when the City alters roadways or pedestrian

facilities, it will install curb ramps where missing and upgrade curb ramps where present but

noncompliant.  In addition, the City's curb ramp request system will enable Class Members to

have input on the locations of the curb ramps that the City will install and remediate.  As a result

of these provisions, millions of dollars will be spent installing and remediating curb ramps in the City in compliance with disability access laws. *Id.* Class Counsel are confident that the curb ramp installation and remediation required by the Consent Decree is sufficient to provide for a system of curb ramps that, when viewed in its entirety, will be readily accessible to persons with mobility disabilities. *Id.* ¶ 40.

Thus, the Consent Decree will provide injunctive relief that is reasonably calculated to effectuate the repairs necessary to make the City's curb ramps accessible to persons with mobility disabilities. This is an excellent result for the Settlement Class, and it is unlikely that this Court would order greater relief. Fox Decl. ¶ 41. In comparison, courts routinely approve class action settlements in which the value of class relief is much less than what could have been obtained at trial. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (proposed settlement amounting only to a fraction of the potential recovery does not mean the proposed settlement is inadequate and should be disapproved); *see also Arnett v. Bank of Am., N.A.*, No. 3:11-CV-1372-SI, 2014 WL 4672458, at *7 (D. Or. Sept. 18, 2014) (approving 7.3 percent rate of recovery as fair, adequate and reasonable).

The potential risks attending litigation support final approval. Courts in this district often consider the risk, expense, complexity and likely duration of further litigation in evaluating the fairness of a potential settlement. *Arnett*, 2014 WL 4672458, *4-5. Litigation and trial of this matter would require the expenditure of significant resources by the Parties and the Court, including resources and time spent on fact and expert discovery, further analysis of data, depositions of Class Members, City employees, and experts. Additional resources would be required to complete post-trial briefing and resolve any appeals. Fox Decl. ¶ 48. In short, this

Settlement obviates the need for further costly and time-consuming litigation that will be better spent on increasing accessibility in the City of Portland.

Moreover, under the Consent Decree, improvements will begin immediately after the Court grants final approval. Fox Decl. ¶ 50. Given the importance of the accessibility of the City's pedestrian right of way to Class Members' lives, the difference between the possibly long delay involved in litigation and the immediate improvements promised by the Consent Decree is an important consideration. The risks of litigation therefore weigh in favor of final approval of the Consent Decree. *Id.* ¶ 51.

**B.      The Settlement Class Should be Granted Final Certification.**

In its order granting preliminary approval of the Decree, this Court certified the Settlement Class, conditioned only upon the entry of the Final Judgment and Order Approving Settlement. ECF 25 at 2. Specifically, the Court ruled that the requirements of Federal Rules of Civil Procedure 23(a) and Rule 23(b) (2) are met by the Settlement Class. As detailed above, the Decree meets the requirements for final approval. As such, the Court should likewise enter an order granting final approval of the Settlement Class.

## IV.      CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court: (1) grant final approval of the Consent Decree; (2) grant final certification of the Settlement Class conditionally certified in this Court's Preliminary Approval Order of June 4, 2018; and (3) retain jurisdiction over the litigation and the parties throughout the Term of the Consent Decree.

Dated: September 10, 2018                     Respectfully submitted,


PORTLAND CIVIL RIGHTS LAW OFFICE

*/s Zack Duffly*
Zack Duffly (OR SBN 143109)
zack@pcrlo.org
PO Box 82544
Portland, OR 97282
Tel:   (503) 893-4360
Fax:   (503) 841-6117

GOLDSTEIN, BORGEN, DARDARIAN & HO

Linda M. Dardarian (CA SBN 131001)
ldardarian@gbdhlegal.com
Katharine L. Fisher (CA SBN 305413)
kfisher@gbdhlegal.com
Ginger L. Grimes (CA SBN 307168)
ggrimes@gbdhlegal.com
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800

CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER

Timothy Fox (CO SBN 25889)
tfox@creeclaw.org
104 Broadway, Suite 400
Denver, CO 80203
(303)   757-7901

Attorneys for Plaintiff and the Putative Class


TRACY REEVE
Portland City Attorney


*/s J. Scott Moede*
J. Scott Moede OSB #934816
Scott.Moede@portlandoregon.gov
Linda Law OSB # 943660

JOINT MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
PAGE 18
20196 00002 hh14dv10mf.002

Linda.Law@portlandoregon.gov
Kenneth McGair OSB # 990148
Ken.McGair@portlandoregon.gov
Portland City Attorney's Office
1221 SW Fourth Avenue, Room 430
Portland, OR  97204
503-823-4047


PACIFICA LAW GROUP LLP

Kymberly K. Evanson WSBA #39973
1191 Second Avenue, Suite 2000
Seattle, WA 98101
206-245-1700
kymberly.evanson@pacificalawgroup.com

Attorneys for Defendant City of Portland